IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANTONIO HERNANDEZ PINEDA ) <br> ID# 1426625 ) <br> Petitioner, ) <br> vs. ) <br> ) <br> RICK THALER, Director, ) <br> Texas Department of Criminal ) <br> Justice, Correctional Institutions Division, ) <br> Respondent. ) | No. 3:10-CV-1545-M (BH) <br><br> Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation.

### I. BACKGROUND

On August 2, 2010, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for murder in cause F06-65154-UV. Respondent is Rick Thaler, Director of TDCJ-CID.

### A. Factual History

On May 24, 2006, the State indicted petitioner for the murder of Victor Garcia on or about April 24, 2006. (Clerk's Record ("C.R."):2-3). He pleaded not guilty and was tried before a jury on November 14-17, 2006. (C.R.:4-5).

The state appellate court recounted the evidence presented at trial as follows:

> Appellant and Victor Garcia were roommates who shared an apartment in Dallas. Garcia was shot and killed in the apartment on April 24, 2006.
>
> Juan Rosas, a friend of appellant and Garcia, testified he spent the night of April 23 at the apartment with appellant and Garcia. The next day, Rosas gave Garcia some money to go buy some food. Garcia returned with the food and began to cook. Appellant told Garcia to let him do the cooking, and Garcia refused. They argued

until Garcia told appellant he was tired of appellant's arguing and that appellant needed to find another place to live. Appellant went to the bedroom, and Rosas heard a gunshot. Appellant returned to the living room, approached Garcia, and holding the gun in his right hand shot at Garcia repeatedly. Rosas heard a total of five gunshots. Garcia fell down and died on the kitchen floor. Appellant put on his boots and a shirt and fixed the gun in his belt. He then turned to Rosas and said "let's go," and walked out of the apartment. Rosas followed appellant out of the apartment. In his initial statement to the police, Rosas gave a false name and said he arrived at the apartment as appellant left and that he did not see the shooting. Rosas testified he lied to the police because he was in violation of the terms of his probation, he was scared of the police, appellant, and appellant's friends, and he did not want to get involved. The police tested Rosas's hands for gunpowder residue and found no gunpowder residue.

When appellant and Rosas left the apartment, Jose Carrillo was standing outside a neighboring apartment talking on a telephone. As appellant walked away, Rosas approached Carrillo and asked him to call 911 because Garcia had been shot and was dying. Carrillo asked his girlfriend, who spoke better English, to call for help. Carrillo saw a man walking away. Carrillo identified appellant from a photo line-up as the man he saw walking away from him, but he could not identify appellant in court.

Rosas testified the police arrived about five minutes later. The first police officer to arrive testified he was dispatched between 3:00 p.m. and 3:15 p.m. When he arrived, Garcia was already dead.

At about 9:00 or 10:00 p.m. that night, appellant arrived at the hotel room of a friend, Martin Lerras, and asked if he could spend the night. Lerras let him in, and appellant spent the night on a mattress on the floor of the room. Lerras testified he never saw appellant with a gun.

The day after the shooting, Maria Guerrero, a friend of appellant and Garcia, went to appellant's and Garcia's apartment. The apartment manager asked her if she had seen appellant because "they" were looking for him. She then went to Lerras's hotel room looking for appellant and Garcia. Lerras opened the door, and Guerrero asked to speak to appellant. She saw appellant lying on the mattress on the floor near the door. As appellant got up from the mattress, she saw the handle of a gun beneath a pillow on the mattress. Appellant stepped outside the hotel room and told her he

had killed Garcia at 3:00 p.m. the previous day. After leaving the hotel, Guerrero called the police, told them where appellant was and that she had seen a gun. The police initially interviewed Guerrero for at least three hours, but she did not tell them appellant had told her he killed Garcia. Guerrero testified that she and appellant had a romantic relationship for about two months which ended before the shooting, that their relationship was no longer romantic on April 24, 2006, but that they were friends. She was also a friend of Rosas, and she believed appellant thought, incorrectly, that she was having an affair with Garcia.

After receiving Guerrero's information, the police obtained a search warrant for Lerras's hotel room. Between Guerrero's departure and the police's arrival, Lerras and appellant left the hotel room to run some errands. While they were riding in the car, appellant told Lerras he had hurt Garcia. Lerras thought appellant meant he had beaten up Garcia. The police arrived after they returned to the hotel room. Lerras testified that when the police knocked on the door, appellant went into the bathroom. The police searched the hotel room and found the gun hidden in the toilet tank in the bathroom. Ballistics testing proved the gun had fired one of the two bullets recovered from Garcia's body and a cartridge found on the floor of appellant's and Garcia's apartment. The testing on the second bullet was inconclusive.

The police also seized the shirt appellant was wearing the previous day and found two bloodstains; DNA testing established one stain was appellant's blood and the other was Garcia's blood.

Appellant testified he did not shoot Garcia and he does not know who did. He testified that at about 2:00 a.m. of the day Garcia was killed, he and Garcia had an argument and appellant left the apartment. Appellant walked to an abandoned apartment complex and slept until about 2:30 p.m. Appellant then walked to the apartment of a brother of a friend, Jose Rincon, from where he telephoned Rincon to ask for a ride to Lerras's hotel. Rincon told appellant to wait, and Rincon drove appellant to Lerras's that night. Appellant said he did not put the gun in the toilet tank of Lerras's hotel room and that he did not know how the murder weapon got there. Appellant testified that when Guerrero arrived at the hotel room, Lerras opened the door, and Guerrero asked to speak to Garcia; Guerrero did not enter the hotel room. Appellant testified he did not tell Guerrero he killed Garcia because of her. Appellant said Guerrero was his and Garcia's friend, and he denied having a romantic relationship with Guerrero. Appellant stated he was not

3

> jealous of Guerrero and Garcia because "[s]he was nothing to me."
> After Guerrero left, appellant went with Lerras while Lerras ran some
> errands. After they returned to the hotel room, the police arrived.
> Appellant denied going into the bathroom when the police knocked
> on the door and testified Lerras went into the bathroom. Appellant
> stated that the lock on Lerras's hotel room door did not operate
> properly and that the door could be opened with a hard push.

*Pineda v. State*, No. 05-06-01635-CR, slip op. at 1-4 (Tex. App.–Dallas, May 28, 2008, pet. ref'd).

The jury found petitioner guilty and sentenced him to fifty years. (C.R.:4-5, 42).

## B. Procedural History

On direct appeal, petitioner alleged that the evidence was legally and factually insufficient to support the jury's verdict and that the trial court erred in rejecting his motion for new trial based on newly discovered or newly available evidence. Petitioner's conviction was affirmed on direct appeal, and his petition for discretionary review was refused. *See* PD-0775-08.

Petitioner filed a state habeas application on September 23, 2008, raising the same grounds for relief as in his federal petition. (State Habeas Transcript[WR-73,888-01]:2-29). On July 28, 2010, the Court of Criminal Appeals denied relief without written order on the trial court findings without a hearing. (S.H.Tr.:cover).

On August 2, 2010, petitioner mailed his petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9). Respondent filed a response on November 16, 2010, and provided the state court records. No reply brief was filed.

## C. Substantive Issues

Petitioner raises three grounds for relief in his federal petition:

1) the prosecutor committed misconduct by threatening and coercing a witness to testify falsely;

2) petitioner is actually innocent of murder; and

> 3) the evidence is factually insufficient to support the conviction.

In his supporting memorandum, petitioner claims his due process rights were violated because the state habeas court did not conduct a live evidentiary hearing. (Memorandum ("Mem.") at 2-3).

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established fed-

5

eral law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. PROSECUTORIAL MISCONDUCT

In his first ground, petitioner alleges that the lead prosecutor committed misconduct by threatening and coercing state's witness Maria Guerrero into testifying that she saw petitioner with the murder weapon. (Mem. at 4).

Petitioner submitted two documents at the state habeas level. The first document, dated December 12, 2006, is a letter petitioner alleges was sent to him in prison that is signed "Mary." The letter (written in Spanish and submitted with an English translation) states that Mary is writing to ask for forgiveness and that she testified "out of frustration and pressure on behalf of the detective." It later states, "what is it worth to live if I ruined the life of a person who is innocent" and "[f]orgive me for saying all those lies, I don't know, anger got the best of me." Finally, the letter states that "[t]he detective was saying that needed to be justice for Victor, but he didn't know that you were the wrong person." (S.H.Tr.:25). The second document, signed by Jose Enrique Rincon, also translated into English, states that Detective Ibarra told Guerrero that petitioner had told the judge that he did it and that whether she cooperated or not, he was already guilty. (S.H.Tr.:29).

The State responded with an affidavit from the lead prosecutor stating that he met with Maria Guerrero one time prior to trial to review her statement with her, that he did not threaten, intimidate, or coerce her in any way and had no knowledge of this occurring, and that he had no reason to believe that she was giving false testimony. (S.H.Tr.:53-54). The State also submitted a written transcript of her videotaped statement to the police in which she states that she saw petitioner with a gun in the motel room. (S.H.Tr.:63).

At the state habeas level, the trial court found that the alleged recantation by Maria Guerrero established at best that she lied because she was angry, not because of threats from the prosecution. The court therefore found that petitioner had failed to establish a factual basis for this claim and that it was without merit. (S.H.Tr.:67-68). This claim was denied on its merits by the Court of Criminal Appeals. (*Id.* at cover). This denial is not contrary to federal law.

7

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions by a prosecutor may violate due process in two ways: "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). The courts first decide whether the prosecutor's actions were improper and, if so, they then determine whether the actions "prejudiced the defendant's substantive rights." *Id.*

When a petitioner asserts a generic due process violation, and it is determined that the prosecutor's actions were improper, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly* 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).

In the case at hand, petitioner has failed to show that the prosecution acted in an improper manner, much less that his trial was rendered fundamentally unfair by any improper actions. Assuming that the letter is signed by Maria Guerrero, the Fifth Circuit has recognized that recanting witnesses should be viewed with suspicion by the courts. *See Wilkerson v. Cain*, 233 F.3d 886, 893

8

(5th Cir. 2000). Maria Guerrero gave a videotaped statement to the police shortly after she called the police on her own volition, in which she stated that she saw petitioner with a gun. Her alleged recantation does not address this initial statement to the police at all. Furthermore, the letter states that she testified out of frustration and pressure from the detective, not that she was coerced to lie. In fact, she states that the detective "didn't know that you were the wrong person." (S.H.Tr.:25). Likewise, Jose Rincon's statement does not include any allegation that Guerrero was intimidated or coerced into lying in her testimony. Both Maria Guerrero and Detective Ibarra testified that she was reluctant to testify against petitioner and felt badly about doing so. (R. 3:186-87; R. 4:55). This does not constitute evidence that the prosecution, or the police, coerced Guerrero into testifying falsely. Petitioner's conclusory allegations of prosecutorial misconduct are insufficient to merit federal habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir.1990) (holding that bare allegations of prosecutorial misconduct do not establish due process violation). Petitioner's first ground for relief is without merit and should be denied.

## IV. ACTUAL INNOCENCE

In his second ground, petitioner claims that he is actually innocent of murder because Maria Guerrero has recanted her trial testimony.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that a claim of actual innocence based on newly-discovered evidence does not and has never been held to be a basis for federal habeas relief absent an independent constitutional violation occurring in the state proceeding. The Court then assumed for the sake of argument that in a capital case, a "truly persuasive" showing of actual innocence would render the execution of an individual unconstitutional and thus warrant federal habeas relief if no state avenue existed to entertain such a claim. The threshold showing for such an "assumed right" would be "extraordinarily high",

9

however. *Id.* at 417. The Court then concluded that conflicting affidavits submitted eight years after a trial, when considered in light of the strong evidence presented at trial supporting guilt, did not meet this threshold. *Id.* at 417-18. Since *Herrera* was handed down by the Supreme Court, the Fifth Circuit has specifically rejected the argument that a showing of actual innocence would warrant habeas relief if there were no state avenue open to process such a claim. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001). Accordingly, under both Supreme Court and Fifth Circuit case law, petitioner is not entitled to federal habeas relief based on a claim of actual innocence.

Moreover, Texas does have an avenue in which to pursue actual innocence claims. In *State ex. rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 398-99 (Tex. Crim. App. 1994), the Texas Court of Criminal Appeals held that actual innocence could be a basis for state habeas relief where a petitioner established as a threshold that newly discovered evidence, if true, created a doubt sufficient to undermine confidence in the verdict. Subsequently, in *Ex parte Elizondo*, 947 S.W.2d 202, 208-09 (Tex. Crim. App. 1996), the court held that in order for a petitioner to prevail on an actual innocence claim, he must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence. Indeed, the state habeas court denied petitioner's actual innocence claim on its merits. (S.H.Tr.:67-68, cover).

Even if federal habeas relief were available on the basis of a stand-alone actual innocence claim, petitioner would not be entitled to relief. Petitioner's evidence of his actual innocence consists of the alleged recanted testimony of Maria Guerrero. First, the statement from Maria that petitioner has submitted as evidence of her recantation does not specify what of her testimony was false. Moreover, even if her testimony that she saw petitioner with a gun and that petitioner told her he killed the victim is not considered, there was ample other evidence of petitioner's guilt. Juan

10

Rosas testified that he witnessed petitioner shooting the victim. (R. 3:68, 80). Jose Carrillo picked petitioner out of a photo line-up as the person he saw leaving the apartment, and Carrillo testified at trial that Rosas told him that the man leaving the apartment had shot a man inside and asked him to call the police. (R. 3:136, 138-40). Martin Lerras testified that petitioner told him that he had hurt the victim. (R. 3:156-57). The police found a gun in Lerras's motel room, where petitioner had been staying, and the gun was determined to have been the weapon used to shoot one of the bullets found in the victim, as well as a spent cartridge found in the apartment. (R. 4:8, 16, 75). Finally, petitioner's shirt was determined to have the victim's blood on it. (R. 4:31-32, 103-05). Petitioner has provided no evidence of actual innocence and is not entitled to relief on the basis of this claim.

## V. SUFFICIENCY OF THE EVIDENCE

With respect to petitioner's factual insufficiency claim, pursuant to the Texas Constitution and statutory authority, Texas appellate courts in the past have conducted factual sufficiency reviews of the evidence. *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *7 (N.D. Tex. Nov. 12, 2004) (recommendation of Mag. J. citing *Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996)), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).[1] While Texas has utilized the more exacting factual sufficiency standard, this standard does not implicate federal constitutional concerns. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). Claims of factual insufficiency are "not cognizable on federal habeas review." *Spencer v. Dretke*, No. 3:02-CV-1988-D, 2005 WL 696719, at *4 n.2 (N.D. Tex. Mar. 23, 2005) (recommendation of Mag. J.), *accepted by* 2005 WL 955969 (N.D. Tex. Apr. 26, 2005).

---

[1] The Texas Court of Criminal Appeals has recently ruled that the factual sufficiency standard is no longer an appropriate standard to review the sufficiency of the evidence on direct appeal, and that the only standard to be used by Texas appellate courts is the legal sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. Oct. 6, 2010).

Moreover, even under a legal sufficiency analysis as permitted under federal law, petitioner's claim would fail. In *Jackson v. Virginia,* 443 U.S. 307, 320 (1979), the United States Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.*

On direct appeal, the state appellate court ruled that the evidence was legally sufficient to support petitioner's conviction. It pointed to Rosas's testimony that he saw petitioner shoot the victim, to Guerrero's testimony that petitioner told her he shot the victim, to Lerras's testimony that petitioner told him that he hurt the victim, and the discovery of the murder weapon in the room where petitioner had been staying. *Pineda v. State*, slip op. at 5-6. This decision is not an unreasonable application of the *Jackson v. Virginia* standard.

Petitioner contends that the State failed to prove that he had possession of the gun, owned the gun, or fired the gun, and that the only evidence connecting him to the gun was Maria Guerrero's testimony. (Pet. at 7). This, of course, is incorrect, as Rosas testified that he saw petitioner shoot the victim, and the murder weapon was found in the motel where petitioner was staying. Petitioner questions the veracity of Rosas's testimony, points to the recanted testimony by Maria Guerrero, and points to his own testimony that the lock on the motel room did not work properly and therefore the gun could have been planted there and that he is left-handed, whereas Rosas testified that he held the gun in his right hand. (Mem. at 8-9). However, a legal sufficiency review requires consideration of the evidence presented at trial. The jury, as the fact-finder, was responsible for weighing the

12

evidence and resolving conflicts in testimony, and a court cannot substitute its view of the evidence for that of the fact-finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Viewed in the light most favorable to the prosecution, there was sufficient evidence presented at trial from which any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. Petitioner's third ground for relief is without merit and should be denied.

## VI. STATE HABEAS PROCEEDINGS

Finally, petitioner asserts that his due process rights were violated because the state habeas court did not conduct an evidentiary hearing. However, "[i]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court." *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997). This is because an allegation that the state habeas proceedings were unconstitutional in some respect is an attack on a collateral proceeding and not on the conviction and detention itself. *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995). Petitioner is therefore not entitled to relief based on this claim.

## VII. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VIII. RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SIGNED on this 24th day of March, 2011.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE